

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 14, 2025

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Street
New York, New York 10007

  Re: *United States v. Jonathan Larmore*, 24 Cr. 140 (PAE)

Dear Judge Engelmayer:

  The Government writes in response to the Court's March 3, 2025 order. *See* Dkt. No. 127. The Court directed the Government "to submit a list identifying at least 10" persons or entities "who purchased WeWork stock at an inflated price after issuance of the press release and who thereafter sold or exchanged it at a lower price," including "the prices and times at which they bought and sold." Dkt. No. 127 at 1. A list of ten such persons is attached hereto as Exhibit A, which firmly establishes the two-level enhancement for ten or more victims pursuant to U.S.S.G. § 2B1.1(2)(A)(i).

  The Government respectfully reiterates its view, however, that every investor who purchased WeWork shares during the fraud period—regardless of when they sold their shares or whether they sold their shares at a lower price than the price they paid for them—is a victim of Larmore's crime. *See* Dkt. No. 123 at 11. Every investor who bought WeWork shares on November 3, 2023 between 5:12 p.m. ET (when the press release was published) and 8:00 p.m. ET (when afterhours trading ended) overpaid for their shares due to the fraudulent inflation from Larmore's crime by an average of $0.67 per share. Nevertheless, the Government has included on Exhibit A ten investors who fit the parameters of the Court's March 3 order. The existence of at least tend such persons clearly establishes the enhancement for ten or more victims pursuant to U.S.S.G. § 2B1.1(2)(A)(i).

  Based on the data currently available to it, the Government was not able to identify all those victims who fit the parameters of the Court's March 3 order, or even those such victims who suffered the largest losses. The starting point for the Government's response to the Court's March 3 order was Government Exhibit 1601, which was admitted at trial. As the parties stipulated, Government Exhibit 1601 is a compilation of electronic "blue sheet" data reflecting the purchase and sale of WeWork stock on November 3, 2023, from approximately 4:58 p.m. to 7:00 p.m. ET. *See* GX 1014 (stipulation). "Blue sheet" data is detailed trade and order information that brokerage firms are required to submit on request to the Securities and Exchange Commission (the "SEC") and the Financial Industry Regulatory Authority ("FINRA"), relating to specific issuers, individuals, and entities. *Id.* Each row of Government Exhibit 1601 represents an individual

Hon. Paul A. Engelmayer                                                                                    Page 2
March 14, 2025

purchase or sale of WeWork stock. *Id.* As reflected in Government Exhibit 1601, there were approximately 1,700 purchasers of WeWork stock between 5:12 p.m. ET (when the press release was published) and 7:00 p.m. ET. As the foregoing makes clear, the data in Government Exhibit 1601 cannot, by itself, identify all those investors "who purchased WeWork stock at an inflated price after issuance of the press release and who thereafter sold or exchanged it at a lower price." If an investor bought WeWork shares after 5:12 p.m. on November 3 and then sold at a lower price before 7:00 p.m. on November 3, then the purchase and sale transactions would be reflected in Government Exhibit 1601 and that exhibit could be used to calculate the victim's losses. If, however, an investor bought WeWork shares after 5:12 p.m. on November 3 and then sold at a lower price sometime after 7:00 p.m. on November 3, then only the purchase transactions would be reflected in Government Exhibit 1601 and additional trading records would be needed to calculate the victim's losses.

A few examples illustrate the point. Victim 1 listed on Exhibit A purchased WeWork shares on November 3, 2023, between 5:35:01 p.m. ET and 6:12:59 p.m. ET, and then sold those shares the same day, between 6:16:18 p.m. ET and 6:16:56 p.m. ET, for a loss of $51,128.54. Accordingly, each of those purchases and sales by Victim 1 are reflected in Government Exhibit 1601 and Victim 1's losses can be calculated with Government Exhibit 1601. Other victims, however, bought WeWork shares on November 3, 2023, after 5:12 p.m. (which purchases are reflected in Government Exhibit 1601), but then sold their shares at some point after 7:00 p.m. (which sales are not reflected in Government Exhibit 1601). Victim 2, for example, purchased 84,000 WeWork shares on November 3, 2023, between 5:52:17 p.m. ET and 6:54:40 p.m. ET, but then sold those shares at a loss between 7:00 p.m. and 8:00 p.m. on November 3, 2023, and also on November 8, 2023. Victim 2 personally provided the Government with trading records that reflect Victim 2's sales and losses. The Government, however, has not been able to obtain trading records from all victims or even those victims it suspects, from Government Exhibit 1601, suffered the largest losses. For example, Government Exhibit 1601 indicates that, on November 3, 2023, between 5:32 p.m. ET and 6:16 p.m. ET, a trading account in the name of "███████████████████" purchased 169,500 WeWork shares at prices between $1.45 and $2.02 per share, for a total of $313,884.85. Government Exhibit 1601 does not, however, reflect the victim selling any of these shares before 7:00 p.m. on November 3, 2023. If the victim sold these shares (like Victim 2 did) after WeWork filed for bankruptcy, then the victim likely suffered a six-digit loss. The Government, however, has not been able to obtain trading records from this victim to calculate the applicable loss.

Ultimately, the information set forth in Exhibit A is more than sufficient to establish that that the offense involved ten or more victims, thereby triggering the two-level enhancement under U.S.S.G. § 2B1.1(2)(A)(i). The Government agrees with the Court that, even under the standard set forth in the Court's March 3 order, "[i]t is circumstantially likely that there were far more than 10 such persons." Dkt. No. 127 at 1.

Hon. Paul A. Engelmayer                                                                    Page 3
March 14, 2025

                                        Respectfully submitted,

                                        MATTHEW PODOLSKY
                                        Acting United States Attorney


                              by:  _____/s/_____
                                        Justin V. Rodriguez
                                        Adam S. Hobson
                                        Sarah Mortazavi
                                        Assistant United States Attorneys
                                        (212) 637-2591


Cc:     Defense Counsel (via ECF)

### Exhibit A[1]

**Victim 1: ████████ ("O.D."), Loss Amount: $51,128.54**

- On November 3, 2023, between 5:35:01 p.m. ET and 6:12:59 p.m. ET, O.D. purchased 120,510 WeWork shares at prices between $1.67 and $2.01 per share, for a total of $224,731.82.

- Then, on November 3, 2023, between 6:16:18 p.m. ET and 6:16:56 p.m. ET, O.D. sold 120,510 WeWork shares at prices between $1.43 and $1.55 per shares, for a total of $173,603.28, resulting in a loss of $51,128.54.

**Victim 2: ████████ ("E.M."), Loss Amount: $42,833.16**

- On November 3, 2023, between 5:52:17 p.m. ET and 6:54:40 p.m. ET, E.M. purchased 84,000 WeWork shares at prices between $1.105 and $1.90 per share, for a total of $114,541.09.

- On November 3, 2023, after 7:00 p.m. ET, E.M. sold 11,654 WeWork shares at prices between $1.15 and a $1.40 per share, and then, on November 8, 2023, E.M. sold 72,346 WeWork shares at prices between $0.69 and $1.01 per share, for a total of $71,707.95, resulting in a loss of $42,833.16.[2]

**Victim 3: ████████ ("T.G."), Loss Amount: $20,029.81**

- On November 3, 2023, between 5:22:53 p.m. ET and 6:27:41 p.m. ET, T.G. purchased 240,645 WeWork shares at prices between $1.26 and $1.89 per share, for a total of $363,421.25.

- Then, on November 3, 2023, between 5:42:56 p.m. ET and 6:35:45 p.m. ET, T.G. sold 240,645 WeWork shares at prices between $1.13 and $1.85 per share, for a total of $343,391.43, resulting in a loss of $20,029.81.

**Victim 4: ████████ ("M.P.V.G."), Loss Amount: $8,500**

- On November 3, 2023, between 6:00:18 p.m. ET and 6:01:05 p.m. ET, M.P.V.G. purchased 25,000 WeWork shares at prices between $1.80 and $1.85 per share, for a total of $45,500.

- Then, on November 3, 2023, between 6:16:34 p.m. ET and 6:17:50 p.m. ET, M.P.V.G. sold 25,000 WeWork shares for $1.48 per share, for a total of $37,000, resulting in a loss of $8,500.

---

[1] Unless otherwise noted, the purchases and sales referenced herein are viewable in Government Exhibit 1601 by filtering column O by the victim's name.

[2] E.M.'s sales are reflected in trading records that E.M. provided to the Government.

Hon. Paul A. Engelmayer                                                                Page 5
March 14, 2025

**Victim 5:** ██████████ **("J.Y.L."), Loss Amount: $5,796.32**

- On November 3, 2023, between 5:58:10 p.m. ET and 6:19:19 p.m. ET, J.Y.L. purchased 6,795 WeWork shares at prices between $1.40 and $1.88 per share, for a total of $10,688.72.

- Then, on November 8, 2023, at 9:42:28 a.m. ET, J.Y.L. sold 6,795 WeWork shares at $0.72 per share for a total of $4,892.40, resulting in a loss of $5,796.32.[3]

**Victim 6:** ██████████ **("V.V."), Loss Amount: $5,772.74**

- On November 3, 2023, between 5:39:33 p.m. ET and 6:34:23 p.m. ET, V.V. purchased 25,000 WeWork shares at prices between $1.20 and $1.90 per share, for a total of $41,250.

- Then, on November 8, 2023, V.V. sold 25,000 WeWork shares at prices between $1.35 and $1.45 per share for a total of $35,477.26, resulting in a loss of $5,772.74.[4]

**Victim 7:** ██████████ **("U.B."), Loss Amount: $5,411.47**

- On November 3, 2023, between 5:31:11 p.m. ET and 5:31:18 p.m. ET, U.B. purchased 5,000 WeWork shares at prices between $1.815 and $1.85 per share, for a total of $9,161.47.

- Then, on November 8, 2023, U.B. sold 5,000 WeWork shares at $0.75 per share for a total of $3,750, resulting in a loss of $5,411.47.[5]

**Victim 8:** ██████████ **("R.G."), Loss Amount: $4,996.38**

- On November 3, 2023, between 5:15:16 p.m. ET and 6:50:44 p.m. ET, R.G. purchased 10,100 WeWork shares at prices between $1.1398 and $1.2397 per share, for a total of $12,312.85.

- Then, on November 8, 2023, R.G. sold 10,100 WeWork shares at prices between $0.72 and $0.73 per share for a total of $7,316.47, resulting in a loss of $4,996.38.[6]

**Victim 9:** ██████████ **("M.A."), Loss Amount: $4,464.04**

- On November 3, 2023, between 5:52:26 p.m. ET and 5:58:08 p.m. ET, M.A. purchased 6,100 WeWork shares at prices between $1.86 and $1.92 per share, for a total of $11,539.04.

---

[3] J.Y.L.'s sales are reflected in trading records that J.Y.L. provided to the Government.

[4] V.V.'s sales are reflected in trading records that V.V. provided to the Government.

[5] U.B.'s sales are reflected in trading records that U.B. provided to the Government.

[6] R.G.'s sales are reflected in trading records that R.G. provided to the Government.

Hon. Paul A. Engelmayer                                                                                   Page 6
March 14, 2025

- Then, on November 3, 2023, between 6:35:21 p.m. ET and 6:36:52 p.m. ET, M.A. sold 6,100 WeWork shares at prices between $1.11 and $1.17 per share, for a total of $7,075, resulting in a loss of $4,464.04.

**<u>Victim 10:</u>** █████████████████ **<u>("C.J.H.G."), Loss Amount: $4,396.28</u>**

- On November 3, 2023, at 5:28:11 p.m. ET, C.J.H.G. purchased 23,960 WeWork shares for $1.410508 per share, for a total of $33,795.77.

- Then, on November 3, 2023, at 5:34:09 p.m. ET, C.J.H.G. sold 23,960 WeWork shares at for $1.227024 per share, for a total of $29,399.50, resulting in a loss of $4,396.28.