UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X

UNITED STATES OF AMERICA,

      v.                                          24 CR 140 (PAE)

JONATHAN MOYNAHAN LARMORE,

            Defendant.

------------------------------------ X

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF HIS POST-TRIAL MOTION FOR A JUDGMENT
OF ACQUITTAL OR IN THE ALTERNATIVE A NEW TRIAL**

                                                Bruce L. Udolf, P.A.
                                                599 SW Second
                                                Avenue
                                                Fort Lauderdale, Florida 33031


                                                Litman, Asche & Gioiella, LLP
                                                350 Central Park West Suite 10F
                                                New York, New York 10025

Defendant Jonathan Larmore submits this Reply Memorandum in response to the Government's Memorandum in Opposition to Mr. Larmore's motion for a judgment of acquittal or, in the alternative a new Trial.

1. **The circumstantial evidence offered by the Government was insufficient to overcome the presumption of innocence and failed to sustain its burden of proof beyond a reasonable doubt:**

Notably, the Government does not take issue with our assertion that inferences to be drawn from the evidence are at least as consistent with innocence as with guilt. Rather, the Government claims that the "few cases" cited in our Memorandum applying this standard are obsolete, having been replaced by the holding in United States v. White, 7 F.4th 90, 103 (2d Cir 2022). However, White made no reference to these cases, much less did it purport to overrule them. And the sheer number of cases supporting the rule, as articulated in United States v. Mulheren, 938 F.2d 364, 368 (2d Cir. 1991) makes it improbable that the Second Circuit intended to render the rule obsolete, sub silentio. The rule has been cited in more than a dozen cases in this Circuit, as recently as 2021. In United States v Landesman, 17 F4th 298, at 329 (2d Cir. 2021) the Court observed:

> 'If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.' United States v Hawkins, 547 F.3d 66,71 (2d Cir. 2008)…United States v Glenn, 312 F.3d 58, 70 (2d Cir. 2002)..

See, also United States v. D'Amato, 39 F. 3d 1249, at 1256 (2d Cir. 1994):

> … the government must do more than introduce evidence "at least as consistent with innocence as with guilt." *United States v. Mulheren, 938 F.2d 364, 372 (2d Cir. 1991)* (quoting *United States v. Mankani, 738 F.2d 538, 547 (2d Cir. 1984))*.

And see United States v. Valle, 307 FRD 53 **76 (S.D.N.Y. 2014):

> Finally, the Second Circuit has made clear that "'[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.'" *Coplan, 703 F.3d at 69* (quoting *United States v. Huezo, 546 F.3d 174, 193 (2d Cir. 2008))* (alteration in original); see also *D'Amato, 39 F.3d at 1256* ("[T]he government must do more than introduce evidence 'at least as consistent with innocence as with guilt.'" (quoting *United States v. Mulheren).*

See also, to the same effect, United States v. Litvak, 2017 U.S. Dist. LEXIS 14384 *7 (D. Conn. 2017); United States v. Harris, 2016 U.S. Dist. LEXIS 197670, *24 (E.D.N.Y. 2016); United States v. Russell, 2014 U.S. Dist. LEXIS 77438,*8 (E.D.N.Y. 2014); United States v. Ortiz, 666 F. Supp. 2d 399, **3 (S.D.N.Y. 2009); United States v. Young Son Im., 2009 U.S. Dist. LEXIS 66022 , *10 (S.D.N.Y. 2009); United States v. Levy, 594 F. Supp. 2d 427,435 (S.D.N.Y. 2009); United States v. Finnerty, 474 F. Supp. 2d 530,537 (S.D. N.Y. 2007); United States v. Rigas, 2004 U.S. Dist. LEXIS 23032, *3 (S.D.N.Y. 23206, *3 (S.D.N.Y. 2004); United States v. Stewart, 305 F. Supp. 2d 368,377 (S.D.N.Y. 2004); United States v. Clemente, 2004 U.S. Dist. LEXIS 627 (S.D.N.Y. 2004); United States v. Namis Group International Corp,. 170 F. Supp.2d 340, 344 (E.D.N.Y. 2001); United States v. Gordon, 199 U.S. Dist. LEXIS 7537 *13 (E.D.N.Y. 1998); United States v. Weinstein, 1998 U.S. Dist. LEXIS, *14 ((E.D.N.Y. *14 (E.D.N.Y. 1998); United States v. Somerstein, 971 F. Supp. 736, 740 (E.D.N.Y. 1997).

Nor did White or the case it cites, United States v. Aquart, 912 F.3d 1, 44 (2d Cir. 2018), involve a fact pattern in which the competing inferences were equal to or favored the defendant's interpretation. In White, the Circuit Court did not address competing inferences favorable to the defense. Rather, the Court found that the district court had overlooked or

minimized evidence favorable to the government (**20). In Aquart, a hearing involving capital punishment aggravating factors, the defense argued that there was insufficient evidence that the defendant's killing of his victims had been premeditated. The Court pointed out that prior to the murders he had told an associate that the victims "had to die." No competing interpretation of this evidence was offered by the defense. In short, the equal or nearly equal inference rule was not tested in either of the cases cited by the Government.

Even under the test suggested by White, the Government's evidence was insufficient. The bulk of the Government's circumstantial evidence was intended to prove a fact not in dispute: that Mr. Larmore lacked sufficient funds in November 2023 to complete the tender offer, and could not have raised funds from investors. (See e.g., evidence concerning the Bloomberg article, Mr. Larmore's borrowing from his mother, his delinquency in mortgage payments, the value of his securities accounts and bank account balances and the absence of funds in Cole Capital). However, the government studiously fails to address, much less refute, defendant' s assertion that he had the ability to borrow sufficient funds. Had Mr. Larmore exercised his options, he would have owned 7,628,726 shares, just 918,726 shares short of 50% of the outstanding minority shares (8,546, 967). At $9 per share, acquiring 918,726 would have cost Mr. Larmore an additional $8,268,534. (Post Trial Brief, p. 13, including fn.1). Mr. Larmore clearly had the ability to borrow funds sufficient to complete his tender offer. Documentary evidence from both City National Bank and from J.P. Morgan Chase, show that Mr. Larmore could have borrowed up to either 50% or 85% of the market value of his shares in publicly traded companies, more than sufficient to enable him to complete the tender offer.

Other areas of the Government's circumstantial evidence were equally weak. No inference adverse to Mr. Larmore could be drawn from his desire to play things close to the vest

and not disclose his specific plans to his brokers or bankers. Clearly, Mr. Larmore did not want competing buyers to purchase WeWork stock on the basis of his planned tender offer before he, himself, could execute his trades.

The Government claims that Mr. Larmore lied in his letter to WeWork about having consulted with attorneys and with City National and JP Morgan. The evidence, however, supports Mr. Larmore claims. As Noted in the Government's Brief, Mr. Larmore had reached out to both banks to determine whether they would be willing to lend money against stock in publicly traded companies, and both banks had replied in the affirmative. Similarly, Mr. Larmore had, in fact, consulted with attorneys and had received advice from Mr. Siegel concerning the necessity of having sufficient funds in hand before filing a Form TO. (In any event, the Government does not explain why it would have been material to investors that Mr. Larmore had consulted with counsel). Most important, Mr. Larmore's letter did not suggest that he had the funds in hand but rather that he "expected" to have the funds in order to complete the tender offer. As noted about this expectation was not unreasonable.

As noted in our Memorandum in support of Defendant's Rules 29 and 33 Motion, Mr. Larmore's comment to Pat Cochran to the effect that the SEC would not be happy with what he was doing was ambiguous at best. Mr. Larmore had focused on the issue of a short squeeze (indeed had Googled the issue) and it was more likely than not that his concern revolved around that issue, rather than his tender offer.

The Government sought to draw an inference of consciousness of guilt based on Mr. Larmore on-line searches prior to making his tender offer. To the contrary, Mr. Larmore searches evidence an intent to follow, not break the law. If he was conscious of wrongdoing, he

would not have needed to search the internet for guidance. And the Government does not dispute that the undated searches reflected on Exhibit    , occurred after Mr. Larmore's arrest.

2. **There was insufficient evidence of <u>artificial</u> manipulation</u>**:

The Government claims (Brief, p.25) that the evidence "permitted the jury to find the defendant guilty <u>even if</u> Mr. Larmore sincerely intended to carry out his tender offer." The Government hypothesizes that, notwithstanding Mr. Larmore's intent to carry out the tender offer, a jury could find that he unlawfully manipulated the price of We Work stock, by sending a "false signal" to the market. (id.) The Government's argument is fallacious. As the Court instructed the jury, manipulation occurs if Mr. Larmore "intended to <u>artificially</u> affect the price of a security or trading activity, that trading does constitute manipulation." (Tr. 880). The key ingredient to a manipulation claim is sending a false signal to the market. If Mr. Larmore intended to complete his tender offer at $9 per share, then the signal he was sending to the market was not false, and the rise in the value of WeWork stock was not artificial. The outstanding share would indeed have been worth up to $9.

The Government has cited no case to refute the common sense proposition that absent a fraudulent or deceitful motive or the willful dissemination of materially false information, the securities laws are not violated merely because an individual or a company by its actions hopes to bring about an increase in the market price of an issuer's stock. If the Government's assertion that the mere publication of the tender offer constituted artificial manipulation, then every tender offer ever made would be manipulative, because, as the Government's expert testified,  the making of a tender offer above market normally results in an increase in the market price,

thereby enhancing the value of share already owned by the offeror. Indeed, every Form 8K issued by publicly traded companies which announced favorable results or predictions would be manipulative because the offeror would know that the news would increase the price of its stock.

## Conclusion

Defendant's motion for a judgment of acquittal should be granted, or in the alternative, the Court should order a new trial.

Dated:    New York, New York
          November 26, 2024

Respectfully submitted,

Bruce L. Udolf, P.A.
599 SW Second Avenue
Fort Lauderdale, Florida 33031
954- 415-2260
budolf@bruceudolf.com


By:/s/ Bruce L. Udolf
       Bruce L. Udolf

Litman, Asche & Gioiella, LLP
350 Central Park West Suite 10F
New York, New York 10025
917-417-6951
richardasche@lagnyc.com


By:/s/ Richard M. Asche
       Richard M. Asche


Attorneys for Defendant